MORRIS L. JOHNSON, PROSECUTOR, v. OCEAN CITY ET AL.

Argued June 6, 1906—Decided November 12, 1906.

1. A petition filed for the appointment of commissioners to assess damages for the taking of land described the land as upon the "beach" front. The description shows that the land was between ordinary high and low-water mark.

2. After an ordinance had laid out a street by a particular description in pursuance of the act of 1889 (*Pamph. L.*, *p.* 206), some of the owners of land within the described street dedicated such lands to the city. *Held*, that it was not necessary that the order appointing commissioners to assess damages should particularly describe the remaining land.

3. The act (*Pamph. L.* 1889, *p.* 206) providing for the laying out of a street along the beach front by cities located on or near the ocean is constitutional, not being a special act regulating the internal affairs of cities.

---

This writ brings up an order of the Circuit Court of Atlantic county appointing commissioners to estimate damages and benefits occasioned by the laying out and opening a street or driveway along the beach or ocean front in Ocean City under the provisions of "An act to authorize cities in this state located on or near the ocean, and embracing within their limits or jurisdiction any beach or ocean front, to lay out and

open streets and drives, and to construct public walks along the beach or ocean front, to grade and otherwise improve the same, to provide the money necessary therefor and to regulate the use thereof," approved April 6th, 1889, and the several supplements thereto, and also under the provisions of an ordinance passed by common council of Ocean city in April, 1904, entitled "An ordinance to relocate, renew, rebuild, repair and maintain a street and public walk in Ocean City," under the provisions of the preceding statute.

Before Justices FORT, GARRETSON and REED.

For the prosecutor, *Bourgeois & Sooy.*

For the defendants, *Thompson & Cole.*

The opinion of the court was delivered by

REED, J.    The first reason assigned for vacating the appointment of commissioners is that the petition for such appointment does not show that the land to be taken is such as can be condemned under the act of 1889. *Pamph. L., p.* 206. The first section of that act provides that "it shall be lawful for common council or other governing body in cities in this state located on or near the ocean, and embracing within their limits or jurisdiction any beach or ocean front, by ordinance * * * to lay out and open streets or drives, and construct public walks along the beach or ocean front, and in like manner to grade or otherwise improve the same, whether such street, drive or public walk be laid out, opened or constructed wholly or partly between low and high-water mark, or wholly or partly on land covered by water."

The argument is that the petition should have shown that the strip of land to be taken was wholly or partly between high and low-water mark, or wholly or partly on land covered by water. It can serve no purpose to discuss the question whether the statute means anything more than that the common council can lay out a street along the ocean front, although the street may be entirely or partly below high-water

mark or covered by water. It is of no use because the ordinance passed by the common council to lay out this street locates the street along and upon the ocean or "beach" front. If it was located upon the "beach" front, it was upon land between high and low-water mark.

It is next objected that it is for only a part of the route laid out by the ordinance that the commissioners are to make an assessment, and that there is no specification of that portion to be so assessed.

It appears that after the filing of the petition for the appointment of commissioners, and after the order upon the property owners to show cause why the commissioners should not be appointed had been made, but six days before the appointment was made, certain owners had granted an easement in their lands to Ocean City, thus disentitling themselves of any right to compensation.

The argument seems to be that the order should have particularly described that portion of the land within the strip laid out by the ordinance for which assessments were to be made, because the commissioners could only ascertain the amount to be paid, and could not ascertain what lands were to be assessed.

It will be perceived that this argument, carried to its logical consequence, would require a specific description of the land of each owner, else the commissioners must ascertain the extent and ownership of each proprietor affected by the taking. If the commissioners can do this, as surveyors of the highway always do in assessing damages for a newly-laid road, it is difficult to see why they cannot take notice that some of the owners have relinquished their right to damages.

The commissioners were, in the language of the act, "to estimate and assess damages and benefits which the opening of the street will occasion." Of course, the assessment is to be made to the owners of the land taken, and the extent of such ownership must be ascertained by the commissioners. Nor can it be perceived in what way the fact that an assessment is not to be made to one owner can in any way affect the interests of another. There is a lack of interest in the prose-

cutor to raise the question, but if legally raised, there seems to be no lack of power in the commissioners to assess only those who have not relinquished their right to the assessment by the execution of an easement deed.

It is also objected, although it is not assigned in the reasons, that the width of sixty feet is unnecessary, because the elevated boardwalk is to be of no greater width than forty feet. But there are to be approaches thereto, which may require the extra twenty feet, and, besides, the statute does not limit the width of the street for which the land is to be taken.

There is also a reason which attacks the act of 1889 (*Pamph. L., p.* 206) upon the ground generally that it is unconstitutional, and especially that it is unconstitutional so far as it relates to condemnation. The specific constitutional defects are not indicated in the reasons.

The point made upon the argument is that the statute provides for an assessment for benefits as well as damages, it being insisted that it is unconstitutional to liquidate damages by benefits. It is further insisted that the statute should have provided for compensation before taking the lands. The doctrine thus invoked, so far as it applies at all, is confined to condemnations by private corporations. *Glazier* v. *New Jersey and New York Railroad Co.,* 31 *Vroom* 353.

It does not apply to taking by municipal corporations. *Lowerer* v. *Newark,* 9 *Vroom* 151; *Randolph* v. *Freeholders of Union,* 34 *Id.* 155, 162.

It is again insisted that the act of 1889 is special because it does not include cities with a beach front, but situated far from the ocean, cities like Gloucester with a beach front, where the tide ebbs and flows. This phase of the statute was not discussed in the case of *Bowker* v. *Wright,* 25 *Vroom* 130, in which case this same statute was held to be constitutional, and the appointment of commissioners under it to assess damages was confirmed.

It is, however, a fact known to everyone that these beach promenades are a special and desirable feature at places where summer visitors resort to enjoy the air and view of the ocean,

and for this reason cities on or near the ocean are capable of a general classification for the purpose mentioned in the act.

There is no other question requiring further remark, and the appointment brought up is affirmed.